UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DARWIN NATIONAL ASSURANCE COMPANY, | § § § | |
| Plaintiff, | § § § | |
| V. | § § | CIVIL ACTION NO. 3:10-CV-2486-B |
| McCATHERN MOOTY LLP; AND LEVI McCATHERN, | § § § § | |
| Defendants. | § | |

## AMENDED MEMORANDUM OPINION AND ORDER[1]

Before the Court is Defendants McCathern Mooty LLP and Levi McCathern's ("McCathern") Motion to Dismiss or Stay (doc. 20) ("Motion to Dismiss"). At issue is whether this declaratory judgment action brought by Plaintiff Darwin National Assurance Company, ("Darwin"), should be stayed or dismissed on ripeness grounds. Darwin brought this action seeking a declaration from this Court as to whether it had a duty to defend and indemnify McCathern under a professional liability insurance policy. Darwin's request for a judicial declaration regarding its duty to defend McCathern stems from events surrounding McCathern's representation of an entity known as West Star in a state court suit brought by Charles and Cherie Robison. According to the Robisons, McCathern's actions during settlement negotiations in that case led to a dispute between the parties over whether an enforceable settlement was reached. The dispute spawned additional pleadings and

---

[1] This "Amended" Order simply corrects typographical errors and makes minor stylistic changes to the Memorandum Opinion and Order filed October 21, 2011 (doc. 33). The "Amended" Order supercedes doc. 33.

1

motions from the parties to that suit as well as appeals to the Amarillo Court of Appeals and the Texas Supreme Court. To date, there has been no final decision on the settlement issue from the Texas Supreme Court. Meanwhile, with the tangential issue of the settlement discussions under appellate review, the underlying personal injury suit remains pending in the state trial court.

Against this backdrop, McCathern moves for dismissal, maintaining that, because there is no ripe claim against McCathern, the Court has no basis upon which to decide the duty to defend issue. On October 13, 2011, the Court heard oral argument from the parties on Defendant's Motion to Dismiss. Having considered the Motion, related filings, and the parties' oral argument, the Court finds for the following reasons that Defendant's Motion to Dismiss should be, and hereby is, **GRANTED**.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

*A. The Relationship between the Parties*

In September 2009, Darwin issued a Lawyers Professional Liability Insurance Policy ("Policy") to McCathern for claims made during the period from September 18, 2009 to September 18, 2010. ¶ 1.[2] Plaintiff now seeks a declaration that it has no duty to defend or indemnify Defendant under the Policy in connection with any claim arising out of the underlying action *Robison v. A&S Transportation, et al.*, Cause No. 2009-546,118 (Dist. Ct. 237th District, Lubbock Cty., TX) ("*Robison* Action"). ¶¶ 2–3.

*B. The Underlying Robison Action*

In 2007, Charles Robison and Cherie Robison filed a personal injury lawsuit against a number

---

[2] All paragraph references are to Plaintiff's Complaint for Declaratory Relief, unless otherwise noted.

of defendants, including West Star Transportation, Inc. ("West Star"). ¶ 16. McCathern served as defense counsel for West Star. ¶ 17. West Star maintained "nonsubscriber" insurance coverage for workplace injuries under a policy issued by Lexington Insurance Company ("Lexington Policy"). ¶ 20. Approximately half of the $500,000 Lexington Policy has been paid towards Mr. Robison's wage benefits and medical bills, leaving about $250,000 on the Lexington Policy limit to pay a potential judgment or settlement. ¶ 21.

On May 5, 2009, the Robisons' counsel sent McCathern a *Stowers* demand seeking settlement in the form of the remaining limit under the Lexington Policy. ¶ 23 ("Under Texas law, the '*Stowers*' doctrine 'imposes a duty on liability insurers to settle third-party claims against their insureds when reasonably prudent to do so'" ¶27). The settlement demand stated that it would expire on May 8, 2009 at 5:00 p.m. *Id.* Lexington Insurance Company ("Lexington") instructed McCathern to accept the settlement demand for the Lexington Policy limit. According to Plaintiff, McCathern then discussed Lexington's acceptance of the Robisons' May 5 *Stowers* demand with the Robisons' counsel. ¶ 29. On May 8, 2009, at 5:42 p.m., the Robisons' counsel received via fax, a letter from McCathern accepting the May 5 *Stowers* demand. ¶ 25. Subsequently, the Robisons' counsel repudiated McCathern's acceptance of the May 5 *Stowers* demand. ¶ 26. The Robisons' counsel then notified the parties that the remaining limit under the Lexington Policy would be inadequate to settle the dispute because of additional liability incurred under the *Stowers* doctrine for the alleged failure to accept the May 5 *Stowers* demand. ¶ 39.

West Star proceeded to amend its answer to assert an affirmative defense of settlement, and filed a counterclaim for breach of settlement agreement, and later filed a motion to enforce settlement. Def.'s M. ¶ 6. On February 8, 2010, the Texas district court denied West Star's motion

to enforce the settlement agreement. ¶ 35. Afterwards, the court granted partial summary judgment to the Robisons on West Star's affirmative defense of settlement. ¶ 36. The court then severed the underlying personal injury action from the counterclaim filed by West Star for breach of settlement agreement. ¶ 37. The court then abated the Robisons' personal injury action pending the resolution of West Star's counterclaim for breach of settlement agreement. Def.'s M. ¶ 6.

The Robisons then filed a petition for writ of mandamus in the Amarillo Court of Appeals. *Id.* at ¶ 7. The court of appeals granted the Robisons' petition for writ of mandamus and directed the trial court to grant the Robisons' motion for partial summary judgment as to West Star's breach of settlement agreement counterclaim. *Id.* at ¶ 8. West Star then filed a petition for mandamus with the Texas Supreme Court challenging the court of appeals' decision. *Id.* at ¶ 8. The Texas Supreme Court has stayed the underlying Robison action as well as West Star's counterclaim, pending its decision. *Id.* at ¶ 9.

According to Plaintiff, it agreed to retain an attorney for McCathern to assess McCathern's potential liability and the attorney has since exceeded the retention of the Policy. Pl.'s Resp. 12. Also Plaintiff states that McCathern has demanded that Darwin attend mediation sessions between the parties and "be prepared to contribute substantial sums toward settlement." *Id.*

C. *The Present Action*

Prior to the Amarillo Court of Appeals' decision, on December 7, 2010, Darwin filed the present action seeking a declaration that it has no obligation to defend or indemnify McCathern under the Policy for any claim arising from the Robison action. Plaintiff premises its claim on its theory that at the time Defendant secured the Policy with Darwin, Defendant was aware that its actions in connection with the *Stowers* demand could constitute a breach of professional duty and

4

had his actions been revealed to Darwin, McCathern would not have qualified for coverage under the terms of the Policy. On April 29, 2011, the Defendant filed the instant Defendant's Motion to Dismiss or Stay (doc. 20).

## II.

## LEGAL STANDARD

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any Court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In order for a court to decide a declaratory judgment action, or any other traditional cause of action for that matter, the action must be ripe in order to be justiciable. *Orix Credit Alliance Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). In determining whether a dispute is ripe for adjudication "[t]he key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* at 895 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507 (1967). Typically, in declaratory judgment actions an issue will be justiciable "only where an 'actual controversy' exists." *Orix*, 212 F.3d 895–6; *see also Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27, 127 S.Ct. 764, 771 (2007). In determining whether an actual controversy lies at the heart of a declaratory judgment action, the Supreme Court has instructed courts to consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

The Fifth Circuit in *Orix*, as well as other courts, have recognized that "applying the ripeness

5

doctrine in the declaratory judgment context presents a unique challenge." 212 F.3d 896; *see also Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 692 (1st Cir. 1994) (noting that "declaratory actions contemplate an 'ex ante determination of rights' that 'exists in some tension with traditional notions of ripeness'") (citations omitted).

District courts are generally granted broad discretion to decide or dismiss a declaratory judgment action. *See Orix*, 212 F.3d 895. This vast discretion is not, however, without limits. The Fifth Circuit has stated that "unless the district court addresses and balances the purposes of the Declaratory Judgment Act and the factors relevant to the abstention doctrine on the record, it abuses its discretion." *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994) (quoting *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n*, 996 F.2d 774, 778 (5th Cir. 1993)). The Fifth Circuit has provided a non-exclusive list of seven factors for a district court to consider in determining whether to exercise its discretion to dismiss a declaratory judgment action. These factors include: "'1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bringing the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, . . . 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy,' and [7]] whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending" *Id.*

### III.

### ANALYSIS

Darwin brought the present action seeking a declaratory judgment that it has no obligation to defend or indemnify McCathern under the Policy for any claim arising out of McCathern's conduct in the underlying Robison action. ¶ 52. To conduct such an analysis, the Court considers, as outlined above: (1) the fitness of issues for judicial decision; (2) the hardship to the parties of withholding court consideration; and (3) the relevant factors in exercising the Court's discretion.

*A. Fitness of Issues for Judicial Decision*

Consideration of Defendant's Motion to Dismiss turns, in part, on whether the controversy over Darwin's duty to defend and indemnify McCathern is of sufficient immediacy and reality to be presently fit for judicial decision. In deciding that question, the Court finds several factors in this case helpful.

The Fifth Circuit has acknowledged that "[a]n actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action that has not yet proceeded to judgment." *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998). Here, while there does exist a pending Texas state court action, it is not one to which McCathern is a party. Rather, the crux of the state suit involves a personal injury claim by the Robisons against West Star and other entities based on serious injuries Mr. Robison allegedly sustained when he fell from a forklift or trailer while "tarping" a load. ¶ 18. It is beyond debate that McCathern was not responsible for any of the events surrounding Robison's injuries. Instead, it is the issue of whether the Robisons and West Star reached an enforceable settlement based on discussions between McCathern and Robison's counsel that prompted this declaratory judgment action. Whether an enforceable settlement was reached by virtue of these discussions is far from settled at this juncture. Further complicating the issue and hindering attempts

7

to crystalize a whether ripe claim exists, is the way the settlement issue has been framed at the state trial court and appeals court levels. Most recently, the Amarillo Court of Appeals addressed the issue in the form of summary judgment against West Star's counterclaim. At the hearing before this Court, the parties indicated that the Texas Supreme Court may ultimately resolve the application for a writ of mandamus on mere procedural grounds or could decide to send the settlement issue back to the trial court to decide. Hr'g Tr. 25. the outcome is, at best, speculative. Finally, even if the Texas Supreme Court determines the settlement in the Robison's favor–that McCathern failed to secure an enforceable settlement–such a determination does not necessarily portend that McCathern will, or even can, be sued for his conduct while representing West Star. In any event, at this point no suit nor formal threat of suit has been lodged against McCathern. And whether a claim will be filed remains speculative at best.

Darwin has failed to supply the Court with any binding authority which endorses the filing of a declaratory judgment action regarding a duty to defend absent an underlying lawsuit against the insured. Cases cited by Darwin are distinguishable on the facts. *See e.g. Central Surety & Ins. Corp. v. Caswell*, 91 F.2d 607 (5th Cir. 1937) (finding insurer's restitution and declaratory judgment claims ripe for adjudication absent a formal suit filed by a third party against the insured after insurer had already paid out a settlement to a third party); *Fireman's Ins. Co. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779 (E.D.V.A. 2007) (finding insurer's declaratory judgment claims ripe absent a formal suit filed by a third party against the insured where third party provided a sworn deposition evidencing injury caused by the inhalation of toxic vapors ); *T.H.E. Ins. Co. v. Dowdy's Amusement Park*, 820 F. Supp. 238 (E.D.N.C. 1993) (finding an actual controversy where a third party's attorney provided notice to the insurer on behalf of a father and minor child involved in an amusement park

accident). *Cf. Georgia Am. Ins. Co. v. Johnson*, 712 F. Supp. 530 (S.D. Miss. 1989) (finding no justiciable case or controversy between an insurer and insured when no underlying suit had been filed by a third party against the insured).

Further complicating the task of determining whether Darwin has a duty to defend McCathern in the absence of a filed-claim, is the method by which Texas law requires the duty to defend analysis be undertaken in the first instance. It is well-settled that "Texas courts apply the 'eight corners' or 'complaint allegation' rule to determine whether an insurer has a duty to defend." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.–Tex.*, 249 F.3d 389, 391 (5th Cir. 2001). "The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy." *Id.* (quoting *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex. App.–Houston 1990, writ denied)). Whether or not Texas recognizes a narrow exception to the eight corners rule that would allow the consideration of extrinsic evidence to determine the duty to defend is an issue that has recently been considered by the Fifth Circuit. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529–31 (2004) (putting forth its best *Erie* guess that the Texas Supreme Court would not recognize an exception under the eight corners rule, but even if it did, it would only be available in the most limited of circumstances). This Court notes, however, that even if an exception to the eight corners rule were to exist as characterized by the Fifth Circuit in *Northfield*, such an exception would be inapplicable in this context. The exception that would allow extrinsic evidence to determine an insurer's duty to defend merely supplements the facts alleged in an underlying case when coverage is impossible to discern from the policy and the extrinsic evidence goes solely to the fundamental issue of coverage and not to the merits of the underlying case. *Id.* at 531. Here, there is no claim against McCathern

9

upon which extrinsic evidence, even if allowed, could be tacked. The Court therefore, questions whether it would even be permissible under Texas law to reach the ultimate question of the duty to defend if it could otherwise find a controversy between the parties sufficiently immediate to warrant resolution from this Court.

Finally, McCathern has yet to make any settlement demand on Darwin. The "demands" Plaintiff references in its Supplemental Filings of Evidence Mooting Defendant's Motion to Dismiss or, in the Alternative Stay (doc. 25), are clearly not demands made by McCathern on Darwin for Darwin to pay claims. Rather they are merely demands by third-parties against McCathern. Such communications at this point can only be characterized as evidencing the potential for a claim under the Policy.

In sum, with the unusual procedural twists and turns in the underlying case and no reliable prediction as to the outcome of the state court litigation especially with respect to McCathern's potential liability, Darwin's declaratory judgment action is not ripe for resolution.

B. *Hardship to the Parties*

The Court also notes that the potential hardships to the parties resulting from the Court's decision to dismiss this case weigh in favor of McCathern. In order to determine whether Darwin has a present duty to defend, the parties would be likely forced to litigate whether McCathern breached a professional duty–the very issue at stake in the underlying Robison action. Furthermore, the Court fails to see the harm to Darwin by forgoing consideration at this time when the question of injuries to a third party must still be resolved, there is no underlying suit against McCathern, and McCathern has not made a settlement demand on Darwin.

C. *Discretionary Factors*

The Court finds that the same circumstances that support finding the issues in this case unfit for judicial determination, also support an exercise of this Court's discretion in dismissing this case. The matters in controversy in this case are clearly contingent upon an action pending before a state court. Further, there has been no indication that Darwin filed this declaratory judgment action in anticipation of McCathern filing suit. Also, as to the factors concerning forum, the Court does not see how intruding upon the present state court action, especially after such time and resources have been spent to force the matter up to the Texas Supreme Court, would be the most proper means of resolving the issues in this case.

## IV.

## CONCLUSION

Darwin's claims do not present an actual case or controversy ripe for adjudication. Therefore, the Court **GRANTS** McCathern's Motion to Dismiss.

**SO ORDERED.**

**Signed October 22, 2011**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE